## Wilson *v*. McCluskey, Appellant.

*Waters—Surface waters—Drainage—City lots.*

1. The owner of a lot in a city or town, in grading and improving the lot may shut out the surface flow upon his lot without any obligation on his part to prevent it from flowing over the adjacent land, or to lead it by artificial or other means to a sewer or other avenue of escape; but in making the improvement he may not proceed negligently so as to do unnecessary damage to others; nor may he obstruct a natural channel for the flow of the water, or a channel that has acquired the character of an easement; nor may he gather surface water into a body and discharge it on the adjoining land.

*Trial—Charge—Practice, C. P.—Failure to refer to testimony.*

2. Where the court in summarizing the testimony in its charge fails to refer to certain portions of it, it is the duty of counsel to call the attention of the court at the end of the charge to the omission.

Argued Dec. 7, 1910. Appeal, No. 161, Oct. T., 1910, by defendants, from judgment of C. P. Schuylkill Co., Jan. T., 1909, No. 217, on verdict for plaintiff in case of James Wilson v. Bessie McCluskey et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for injuries from water. Before SHAY, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant presented, among others, the following points:

1. If the jury believe that the plaintiff permitted the ground in the passageway to the south of his property to bank up against his sills and that the decay in the sills was caused by his negligence in allowing that passageway to have a deposit of earth above his foundation wall, then he cannot recover for the damage he claims for the sills. *Answer:* This we refuse. [1]

6. Inasmuch as the evidence shows that the plaintiff and defendants own adjoining lots, that they are situated on a sloping hillside, so that the surface drainage from rain, etc., ran over both lots from the front to the rear, and that

the most pronounced slope is from the property of defendants north to the property of the plaintiff; that the defendants have done nothing except improve the front part of their lot by erecting thereon a frame dwelling, and they only graded their lot sufficiently to make such improvements; that they have not changed the character nor direction of the flow of water, nor added to the volume of it except that in consequence of the raised grade for the foundation to their house much of the water that had previously spread over both properties now runs over the plaintiff's, and it does not appear that the defendants were negligent in making their improvements, nor that they closed any natural channel, the plaintiff cannot recover. *Answer:* We say to you that if you believe that that is the evidence in the case, then we affirm that point, calling your attention to what we said in our general charge, that the right to use one's own property must prevail, but the owner may do so without compensation only where the resulting damage is not avoidable at all where the expense of obviating it would be practically prohibitory; and we reserve for our future consideration the question whether there is any evidence which entitles the plaintiff to recover. [2]

The court charged in part as follows:

[If you find from the evidence that that damage did result from the negligence of the defendants in the way in which they built their house and maintained their water spout, so that it threw this water over upon the land of the plaintiff, then you would be justified in finding that the defendants were negligent and thereby injured the plaintiff.] [3]

[The plaintiff contends that prior to the time that McCluskeys built their property there was no water in the cellar, and it was a nice, dry place. The witnesses of the plaintiff, with the exception of two, testify to that. [4]

Verdict and judgment for plaintiff for $84.00. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them, and (5) refusal of binding instructions as stated in the opinion of the Superior Court.

*William Wilhelm*, for appellants.—In the face of the many decisions on the question of contributory negligence, we respectfully hold that the court erred in refusing the defendants' first point: Rielly v. Stephenson, 222 Pa. 252; Kauffman v. Griesemer, 26 Pa. 407; Strauss v. Allentown, 215 Pa. 96; Penna. Coal Co. v. Sanderson, 113 Pa. 126; Sipe v. Penna. R. R. Co., 219 Pa. 210.

*M. M. Burke*, with him *J. F. Mahoney*, and *Edgar W. Bechtel*, for appellee.—The appellee contends that the case of Wahl v. Vetter, 38 Pa. Superior Ct. 234, conclusively rules the case at bar.

OPINION BY RICE, P. J., April 22, 1911:

In Bentz v. Armstrong, 8 W. & S. 40, KENNEDY, J., speaking of the rights and duties of adjoining owners of lots in towns and cities with respect to surface water, said: "It is of great importance that the water on each lot, arising from rain or other causes, should be conducted by the owner or occupier thereof, if he wishes to have it removed, directly from it to a sewer or other place appropriated for the receipt and discharge of the same, and not be turned or led on to an adjoining lot, without the consent of the owner; and it appears to me to be the duty of the owner of each lot, if he improves it, to do it in such a way if practicable as to lead and conduct the water that happens to fall or be on it, off in the way just mentioned, without regard to the original formation of the surface of his lot. If the rear of his lot should be elevated so much above the front that he cannot conduct the water to the rear, so as to discharge it into a sewer or other appropriate place, then he ought to bring it to the front of his lot, where he must of necessity have some place to discharge it, without throwing it on his neighbor's ground."

The cases of Davidson v. Sanders, 1 Pa. Superior Ct. 432, and McMahon v. Thornton, 5 Pa. Superior Ct. 495, were decided in accordance with this doctrine, and if it is to be followed here, there was no error of which the defendants can complain in the answers to the points quoted in the second and fifth assignments of error or in the instructions quoted in the third assignment. But in the case of Rielly v. Stephenson, 222 Pa. 252, decided in 1908, it was declared that the foregoing excerpt from the opinion in Bentz v. Armstrong is mere dictum not authorized by general principles and not consistent with the rule previously established in the same opinion. The true rule was held to be that the owner of a lot in a city or town, in grading and improving the lot may shut out the surface flow upon his lot without any obligation on his part to prevent it from flowing over the adjacent land, or to lead it by artificial or other means to a sewer or other avenue of escape; but in making the improvement he may not proceed negligently so as to do unnecessary damage to others; nor may he obstruct a natural channel for the flow of the water, or a channel that has acquired the character of an easement; nor may he gather surface water into a body and discharge it on the adjoining land. Hence it follows that if he so constructs the eaves troughs on his house as to gather the rain water that falls upon the roof, and to discharge it through a rain spout directly upon the land of his neighbor he is liable. This conclusion is not necessarily in conflict with the decision in Sowers v. Lowe, 20 W. N. C. 76. At any rate, the learned trial judge was fully warranted by the general rule laid down in Rielly v. Stephenson, and our decision in Wahl v. Vetter, 38 Pa. Superior Ct. 234, in giving the instructions he did relative to the injury that was alleged to have resulted from the water flowing through the defendant's rain spout, or on the plaintiff's premises, and carrying with it cinders and ashes. See further as to roof water, 3 Farnham on Waters and Water Rights, sec. 888*a*, p. 2581; Gould v. McKenna, 86 Pa. 297.

It now becomes necessary to consider the question as to the disposition of surface water, which is fairly raised by the second assignment of error. The court would have been justified in refusing the point therein quoted because it assumes facts which it was the province of the jury to determine. The answer practically left them to their determination, and affirmed the legal proposition but with the qualification, which might well be understood by the jury to mean, that if in consequence of the erection of the defendants' house upon the location chosen by them, and the incidental raising of the grade of their lot, much of the water that had previously spread over both properties now runs over the plaintiffs', the defendants would be liable unless the resulting damage was not avoidable at all, or the expense of avoiding it would be practically prohibitory. A jury might well find that the defendants were not negligent in locating their house where they did or in the grading done by them with reference thereto, but that the resulting increased flow of water on the defendants' lot might have been avoided by the defendants locating their house on another part of the lot, or by leaving the grade of their lot as it was, or by erecting an obstruction to the flow of water from their lot to that of the plaintiff, or by conducting the water elsewhere in the manner described in Bentz v. Armstrong. We cannot confidently assert that, if they had so found, they would have gone counter to the instructions under consideration in awarding damages to the plaintiff. On the contrary, we think they might safely interpret the instructions in that way. But to do so, would fall little short of accepting and applying the doctrine that each owner must so regulate and grade his own lot as that the water that falls or accumulates upon it shall not run upon the lot of his neighbor; and this, as we have seen, is not the rule laid down in Rielly v. Stephenson. The distinction is clearly brought out in the following portion of the opinion in the latter case: "The owners of lots in cities and towns buy and own with the manifest condition that the natural or existing

surface is liable to be changed by the progress of municipal development. All such owners have equal rights neither lessened nor increased by priority of improvement, and the primary right of each owner is to protect himself and his lot from loss or inconvenience from the flow of surface water. The owner at the foot of the slope is under no obligation to allow his lot to continue as a reservoir for the surplus water of the neighborhood. He may shut it out by grading or otherwise, and the fact that thereby he may incidentally increase the flow on the adjoining lot, neither makes him answerable in damages nor affects the adjoining owner's right in his turn to shut out the original, plus the increased flow on his lot. The owner cannot be coerced as to time or manner of improvement by risk of having put upon him the burden of providing for the flow upon others.

"Some things of course he may not do. He may not proceed negligently so as to do unnecessary damage to others. But so far as he acts upon his right to protect his enjoyment of his own property, any incidental loss to his neighbor is damnum absque injuria. It is clearly settled, however, first, that he may not obstruct a natural channel for the flow of water, or a channel that has acquired the character of an easement; and, secondly, he may not gather surface water into a body and discharge it on the adjoining land. His right is to shut out the invading water, as a common enemy, for the protection of his own land." So far as liability for flow of surface water was concerned, the true test was whether the defendants proceeded negligently so as to do unnecessary damage to the plaintiff, not simply whether the increased flow was preventable, by the defendants improving their lot in some other manner. The difficulty of separating the damage, if any, consequent upon the defendants' improvement of their property in a nonnegligent manner from the damage consequent upon the construction of their eaves troughs and water spouts in such manner as to cause the roof water, carrying

with it cinder and ashes, to flow into the plaintiff's premises may be great, but that is not sufficient reason for relieving the jury from the duty of observing the distinction in estimating and awarding damages.   See Little Schuylkill Nav. Co. v. Richards, 57 Pa. 142; Gould v. McKenna, 86 Pa. 297; Gallagher v. Kemmerer, 144 Pa. 509; Pierce v. Lehigh Valley Coal Co., 40 Pa. Superior Ct. 566; DeGrazia v. Piccardo, 15 Pa. Superior Ct. 107.   We feel constrained to sustain the second assignment of error.

We also sustain the first assignment of error.   The point, taken as a whole, did not assume that the existence of the deposit of earth against the sills of the plaintiff's house was due to his negligence, but requested the court to say that if the jury found that the plaintiff negligently permitted it to be there, and that the decay of the sills was caused by his negligence in that particular, he could not recover damage for the decay of the sills.   It seems to us that the point was permissible under the evidence and should have been affirmed.

The mistake, if mistake there was, in the court's attempt to summarize the testimony of the plaintiff's witnesses as to the condition of his cellar before the defendants built (fourth assignment), undoubtedly would have been corrected if the defendants' counsel had called the court's attention to it at the end of the charge.   In the absence of such request, it is not, of itself, sufficient ground for reversal.

The request for binding instructions (fifth assignment) upon the ground that the plaintiff failed to erect on his own premises a countervailing obstruction to the flow of surface water was properly refused.   He might have dammed it back but he was not bound to do so, if it was tortiously cast on his land by the defendants.

The case was for the jury and in the main was well tried, but for the reasons suggested it must go back for a retrial.

Judgment reversed and venire facias de novo awarded.